IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTI BUEHRER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. CIV-12-420-HE |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration[1], ) | |
| ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter Tr. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Plaintiff protectively filed her applications for SSI and DIB on April 28, 2010, and April 29, 2010, respectively. Tr. 140-46, 147-50. Plaintiff alleged an onset date of October 10, 2007. Tr. 140, 147. The applications were denied on initial consideration and on reconsideration at the administrative level Tr. 65-79. At Plaintiff's request, a hearing was held before the administrative law judge (ALJ) on May 26, 2011. Tr. 26-64, 91-92. The ALJ issued his decision on June 15, 2011, finding that Plaintiff was not disabled. Tr. 12-20. On February 21, 2012, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. Tr. 1-5.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the

ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. Tr. 13-14. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 14. At step two, the ALJ found that Plaintiff had severe impairments including diabetes mellitus and neuropathy. Tr. 14. The ALJ applied the Psychiatric Review Technique, and found Plaintiff's depression to be nonsevere. Tr. 14-15. At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or equaled the listing of presumptively disabling impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15. At step four, the ALJ found that Plaintiff was able to perform the full range of sedentary work. Tr. 15-16. At step four, the ALJ determined that, during the relevant period, Plaintiff was capable of performing her past relevant work (PRW) as an administrative assistant, payroll clerk, and accounts payable clerk. Tr. 19. Thus, at step four the ALJ determined that Plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 19. Alternatively, relying on the Medical-Vocational Rules as a framework and the testimony of the vocational expert (VE), the ALJ found at step five that Plaintiff was capable of performing other work such as receptionist, accounting clerk, and records clerk. Tr. 19-20. Accordingly, the ALJ found Plaintiff not to be disabled under the Social Security Act. Tr. 20.

## ISSUES PRESENTED

Plaintiff raises three points of error. First, she contends that the ALJ failed to properly analyze the record in reaching his finding that Plaintiff's depression was not severe, and in analyzing the limiting effects of her severe diabetes. Plaintiff's Brief in Chief, 4-15. Second, she claims the ALJ failed to follow the treating physician rule in evaluating the medical opinions in the case. Plaintiff's Opening Brief, 15-16. Third, Plaintiff contends that the ALJ "cherry picked" the evidence that supported his decision, ignoring other evidence that was inconsistent with his findings. Plaintiff's Opening Brief, 17. The undersigned finds the first of these arguments to be dispositive of the appeal.

In his decision at step two, the ALJ sets forth his finding as to the severity of Plaintiff's depression. Tr. 14-15. He considered the impairment under the provision in the Listing of Impairments used for evaluating mental disorders: 12:00C. Tr. 14-15 (20 C.F.R. Part 404, Subp't P, App. 1). The listing requires that four broad functional areas be considered in making the severity determination: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.*

The ALJ found that Plaintiff's limitation in each of the first three functional areas was "mild." Tr. 15. In doing so, the ALJ cited Plaintiff's daily activity report, a third party's functional report, the "mental status examination," and Plaintiff's report of one, remote hospitalization or period of decompensation. Tr. 15. After concluding that Plaintiff's depression did not meet the severity level, the ALJ explained that this nonsevere finding was not a residual functional capacity assessment, and that the RFC assessment used at steps four and five "requires a more detailed assessment by itemizing various functions contained in the broad categories...." Tr. 15. This

explanation is followed by the following statement: "*Therefore*, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." Tr. 15. However, Plaintiff's mental impairment is mentioned only one more time in the entire decision—when the ALJ mentioned that Plaintiff took Prozac for depression. *See* Tr. 16.[2]

The Commissioner argues that the ALJ weighed the medical evidence, and correctly determined that Plaintiff's depression was not severe. Commissioner's Brief, 3. Moreover, the Commissioner contends that even if the ALJ did not "specifically cite" to any medical opinions in making his step two finding as to the severity of Plaintiff's depression, the "need to do so was greatly lessened by the fact that the reports were consistent with the ALJ's finding and presented no conflict." Commissioner's Brief, 4 (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (if treating physician's evidence does not conflict with the ALJ's RFC finding, the burden to expressly discuss such evidence is minimized).

The Commissioner then goes on to discuss the medical record with regard to Plaintiff's depression, and concludes that because that evidence is "consistent" with the ALJ's decision, any error in failing to expressly discuss it is harmless. Commissioner's Brief, 4-7 (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012).

Plaintiff replies that the Commissioner is engaging in improper post-hoc rationalization to support the ALJ's decision. Plaintiff contends that the ALJ simply did

---

[2] Plaintiff testified at the hearing that she takes Prozac for depression; however, consultative examining psychologist Dr. Cruse states in his report that Plaintiff takes Wellbutrin. Tr. 57, 416-17. Plaintiff also reported that her general health care provider prescribed buproprion (generic Wellbutrin) for depression. Tr. 234; 390-92.

5

not provide an explanation for his conclusion that Plaintiff's depression was nonsevere, and that reasons supplied by the Commissioner at this point cannot be used to support the ALJ's finding. Plaintiff's Reply Brief, 2-3.

It is the ALJ's duty to give consideration to all the medical opinions in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). He must also discuss the weight he assigns to such opinions. *Id.* at §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

Here there was almost no mention of the medical evidence regarding Plaintiff's depression, and certainly no explanation of how it was used by the ALJ to reach his decisions at steps two, four, or five. In fact, there are only two sentences containing any reference to medical evidence with regard to Plaintiff's mental impairment. At step two, the ALJ refers (but does not cite) to the "mental status examination" in support of his finding that Plaintiff has only mild limitations in the area of concentration, persistence, or pace. Tr. 15. Later in his decision, the ALJ mentions that Plaintiff is taking Prozac, an antidepressant; this appears to come from the hearing testimony as the medical record shows that Plaintiff is taking Wellbutrin or its generic, buproprion. *See* Tr. 16. Neither the names of the consultative examining psychologist and state agency medical consultant, nor any discussion or evaluation of their opinions appear in the decision. Post-hoc arguments supporting a particular decision are no proxy for the

ALJ's own explanation as to how and why he or she made the findings contained therein. *Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ... decision itself." (citations omitted)); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

Moreover, the Tenth Circuit's recent decision holding that a failure to discuss medical opinions can be harmless error under certain circumstances does not aid the Commissioner here. In *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012), the Plaintiff challenged the ALJ's treatment of five medical opinions, but the Court found any such failure to be harmless under the circumstances of that case. *Id.* at 1165. For example, with regard to one of the sources, the Court stated:

> These specific limitations that Dr. Crall assigned to Ms. Keyes–Zachary were not inconsistent with the limitations the ALJ placed in her RFC. *See id.*, Vol. 3 at 469 (limiting Ms. Keyes–Zachary to "simple, repetitive and routine tasks" and slightly limiting her "contact with the general public, co-workers and supervisors"). Any error in failing to specify the weight given to the opinion was harmless.

*Id.*

In the decision now under review, the opinion of consultative examiner Dr. Cruse certainly appears to be inconsistent with the decision of the ALJ. For example, Dr. Cruse found that Plaintiff's "occupational functioning has been severely impaired for three years," that her "interpersonal functioning has been moderately impaired," and that her "current stress level appears to be severe." Tr. 418. Dr. Cruse also found Plaintiff's

current GAF[3] score to be 44. Although the Commissioner argues that the ALJ's severity and RFC findings are consistent with the state agency medical consultant, Dr. Hartley, Tr. 423-36, it should be noted that Dr. Hartley mentioned the GAF score assigned by Dr. Cruse but eliminated any reference to the other three findings quoted above. *See* Tr. 435.

With regard to Plaintiff's depression, the ALJ's decision is form over substance; he cites the correct standards, but then reaches his findings with no explanation. For example, the ALJ appears to state that the step two severity finding (itself unsupported by discussion) is not an RFC, and that a more detailed assessment is to follow, but then never returns to the issue. The ALJ includes no limitations related to depression in the RFC finding, and an attempt to discern his reasons for doing so would be sheer speculation on the undersigned's part. Also, as to Plaintiff's mental impairment, all that is included with regard to subjective limitations is the boilerplate language that has been repeatedly criticized by the Tenth Circuit. Tr. 17. *See, e.g. White v. Barnhart,* 287 F.3d 903, 909 (10th Cir. 2001) (noting that the Tenth Circuit Court of Appeals has condemned the practice of boilerplate recitation of law and has insisted that an ALJ give "specific reasons" for his decision) (citation omitted)). When an ALJ elsewhere explains his assessment, the use of boilerplate language in and of itself is not fatal. *See*

---

[3] As explained by the Tenth Circuit in *Keyes-Zachary*, the GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *Keyes-Zachary,* 695 F.3d at 1162 n. 1 (citing American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed.2000)). Plaintiff's GAF score, as along the "hypothetical continuum of mental health [and] illness" indicates the following: 41–50: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

*Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (stating that boilerplate language is insufficient to support a credibility determination only "in the absence of a more thorough analysis"); *see also Kruse v. Astrue*, 436 F. App'x 879, 887 (10th Cir. 2011) ("boilerplate language is insufficient to support a credibility determination only 'in the absence of a more thorough analysis'" (citation omitted)). Here, there is no analysis of Plaintiff's mental impairment, much less one that could be characterized as "thorough."

Finally, it may well be that Plaintiff's depression was properly found to be nonsevere, and that it had no impact on her RFC, but the decision is not written in any way that the undersigned can meaningfully review such a conclusion. The Commissioner's attempt to supply the discussion, evaluation, findings, and other requirements of a decision that might be supported by substantial evidence simply cannot take the place of the ALJ's obligation to supply a decision that is capable of review under the relevant factual and legal standards.

Because the ALJ's treatment of Plaintiff's mental impairment at step two requires reversal, it is unnecessary to discuss the other two claims of error that allegedly occurred at later stages of the sequential process. The undersigned assumes that upon remand, the Commissioner will carefully consider the matter under all of the applicable legal standards.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the

parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **June 28, 2013**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on June 14, 2013.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE